Jack Silver (SBN 160575)
lhm28843@sbcglobal.net
Jerry Bernhaut (SBN 206264)
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Telephone: +1 707 528 8175
Facsimile: +1 707 528 8675

John Lynn Smith (SBN 154657)
jlsmith@reedsmith.com
Julia C. Butler (SBN 199133)
jbutler@reedsmith.com
Joonsik Maing (SBN 240927)
jmaing@reedsmith.com
REED SMITH LLP
1999 Harrison Street, Suite 2400
Oakland, CA 94612-3572

**Mailing Address:**
P.O. Box 2084
Oakland, CA 94604-2084

Telephone: +1 510 763 2000
Facsimile: +1 510 273 8832

Attorneys for Defendant Redwood Landfill, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WASTE MANAGEMENT INC., REDWOOD LANDFILL, INC. and DOES 1-10, inclusive,<br><br>Defendants. | Nos. C-07-5058 WHA<br>C-08-1686 WHA<br><br>**CONSENT DECREE** |

A. <u>BACKGROUND</u>

1. On or about February 6, 2007, Northern California River Watch ("NCRW") served Redwood Landfill, Inc. ("RLI") and Waste Management, Inc. ("WMI") with a Notice of

Violations and Intent to File Suit under the Federal Clean Water Act ("Notice of Violations 1") related to alleged environmental violations at the RLI facility located at or near 8950 Redwood Highway North, Novato, California ("Site"). NCRW, RLI and WMI shall be referred to herein collectively as the "Parties" and each individually as a "Party";

2. On or about October 1, 2007, NCRW filed suit in the United States District Court, Northern District of California, entitled Northern California River Watch v. Waste Management, Inc., Redwood Landfill, Inc., et al., Case No. C07-5058 WHA ("Action #1"), alleging causes of action for violations of the Clean Water Act related to alleged impermissible discharges to surface waters and allegations regarding RLI's compliance with their NPDES stormwater permit;

3. On or about October 17, 2007, NCRW served RLI and WMI with a copy of a Notice of Violations and Intent to File Suit under the Federal Resource Conversation and Recovery Act ("RCRA") ("Notice of Violations 2") related to alleged releases of hazardous waste (as defined by RCRA) at the Site into ground and surface waters;

4. On or about October 31, 2007 NCRW voluntarily dismissed WMI without prejudice from Action #1 on representation from RLI that RLI was the sole owner and operator of the Site;

5. On or about March 27, 2008, NCRW filed suit in the United States District Court, Northern District of California, entitled Northern California River Watch v. Waste Management, Inc., Redwood Landfill, Inc., et al., Case No. C08-1686 WHA ("Action #2"), alleging causes of action for violations of RCRA related to alleged impermissible discharges to surface waters and allegations regarding RLI's compliance with its NPDES stormwater permit. Action #1 and Action #2 shall collectively be referred to as the "Actions";

6. On or about April 15, 2008, NCRW served RLI and WMI with a Supplemental Notice of Violations and Intent to File Suit under the Federal Clean Water Act ("Notice of Violations 3"), related to alleged direct releases of pollution to surface waters from RLI's and WMI's stormwater collection system and for alleged violations of RLI's NPDES stormwater permit. Notice of Violations 3 also included sampling results from the stormwater discharges from the Site to waters of the United States. The Actions, Notice of Violations 1, Notice of Violations 2 and Notice of Violations 3 shall collectively be referred to as the "Claims";

7. RLI avers it is the sole owner and operator of the Site and that WMI is not a proper party to Action #1 or Action #2 and further avers that WMI is not subject to personal jurisdiction in the State of California;

8. The Parties wish to compromise, resolve, settle, and terminate any and all disputes or claims between them as to the Site and as a result consent to the entry of this Consent Decree and Order without trial of any issues and stipulate that in order to settle the Claims, this Consent Decree and order should be entered. This Consent Decree constitutes a settlement of disputed claims. It is not an admission of jurisdiction over or liability for the Claims or an admission of any fact. Should this proposed Consent Decree fail to be entered for any reason, this proposed Consent Decree, and any statement or other provision contained in this proposed Consent Decree shall have no legal effect and shall not be used for any purpose in any subsequent proceeding in this or any other litigation.

9. The Parties agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED AND DECREED:

B. **COURT'S AUTHORITY**

This Court has authority under the Clean Water Act, 33 U.S.C. § 1365, and the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, to enter and enforce this Consent Decree.

C. **INJUNCTIVE RELIEF**

1. Information Sharing.

   (a) Constituent Testing. RLI will provide NCRW with the results of the constituents of concern it tested for in May 2008 as required by Title 27 of the California Code of Regulations ("COC Testing"). Title 27 reflects the current regulations of the California Integrated Waste Management Board and the State Water Resources Control Board pertaining to waste disposal on land. All COC Testing results will be provided within thirty (30) days of the Effective Date of this Consent Decree or within thirty (30) days of the date the COC Testing results are available to RLI, whichever is later. (As used herein, the "Effective Date of this Consent Decree" means the date this Consent Decree is entered by the Court.)

   (b) Monitoring Wells. Within thirty (30) days of the Effective Date of this Consent Decree, or within thirty (30) days of receipt of same by RLI, whichever is later, RLI may elect to provide NCRW with all boring logs made in connection with the drilling of any existing well in its possession, custody or control located after a reasonable search. If RLI does not elect to provide NCRW with the boring logs, RLI shall, within eighteen (18) months of the Effective Date of this Consent Decree, complete a study, under the specific guidance of the San Francisco Bay Regional Water Quality Control Board, for the implementation of an improved program to monitor

groundwater within the Pleistocene Alluvium that underlies the Bay Mud which includes a review of all data from the wells screened in the alluvium and hydrological analyses (hydrogeology is the distribution and movement of groundwater in the soil and rocks including aquifers) that reveal where additional wells should be located. RLI will provide NCRW a copy of that report within thirty (30) days of its completion.

    (c) Compliance Documentation. For a period of two (2) years from the Effective Date of this Consent Decree, RLI will provide NCRW with copies of all documents required by and provided to regulatory agencies as verification of RLI's compliance with its water quality permits including but not limited to Semi-Annual Groundwater Monitoring Reports, Optional Demonstration Reports, Alternate Source Demonstrations, Leachate Management and Monitoring Annual Reports, Storm Water Annual Report and the Annual Report of Self-Monitoring and Operations.

  2. Compliance Audit. Within one (1) year from the Effective Date of this Consent Decree, and repeated once within thirteen (13) months thereafter, RLI will conduct an annual audit to determine compliance with its permits and any laws or regulations related to water quality by an independent auditor mutually agreeable to the Parties and will provide NCRW with copies of any compliance reports generated by the independent auditor within thirty (30) days of their receipt by RLI for a period of three (3) years of the Effective Date of this Consent Decree. In lieu of these compliance audits, within one (1) year of issuance of its forthcoming Solid Waste Facilities Permit or within the time frame designated in the forthcoming Solid Waste Facilities Permit, whichever time period is shorter, RLI may obtain ISO 14001 certification. As part of the ISO 14001 certification process, RLI shall use the established corrective action procedure to initiate corrective and/or preventive actions based on the audit findings. After RLI receives the ISO 14001 certification, a third-party ISO 14001 certification registrar will audit the site every 6 or 12 months to review the ongoing effectiveness of the system in achieving the policy commitments.

3. Site Visits. RLI will allow NCRW two (2) annual site visits for the next two (2) years for the purposes of observing stormwater sampling. NCRW shall be provided split samples from any stormwater sampling event it chooses. The split samples will be taken or shipped to a certified laboratory of NCRW's choosing. RLI may, if it chooses, (1) deliver the samples to the laboratory; (2) ship them itself; or (3) request NCRW to ship them and maintain and deliver to RLI a chain of custody for such samples, at NCRW's expense. NCRW shall be responsible for any payment due to the laboratory it chooses to test or analyze the split samples from a stormwater sampling event. RLI shall provide NCRW with twenty-four (24) hour notice of a potential stormwater sampling event, if possible. If RLI has less than twenty-four (24) hour notice of a potential stormwater sampling event, it will provide NCRW with as much notice as is reasonably possible.

D. **SUPPLEMENTAL ENVIRONMENTAL PROJECTS**

1. Surface Water Sampling Study. Within one (1) year of the Effective Date of this Consent Decree, RLI will fund a study to determine the feasability of conducting supplemental surface water sampling and analyses in conjunction with the compliance monitoring required by the Site water quality permits. The feasibility study will identify the specific objectives and impact parameters to be evaluated and the suite of sampling and analysis methods necessary to provide reliable and meaningful data with regard to potential water quality impacts associated with the discharge of surface water runoff and shallow groundwater from the Site to adjacent waters. The study will be conducted by a consultant mutually agreeable to the Parties. The scope of work will be approved by the Parties. The cost of the study will not exceed $40,000. The results of the study will be submitted to the Regional Water Quality Control Board and will become a public document. The RWQCB will determine if the findings of the study warrant increased sampling at the Site and new permit conditions in the Waste Discharge Requirements.

2. Improved Stormwater BMPs. Within one (1) year of the Effective Date of this Consent Decree, RLI will fund a study to determine the most affective and economical means for treating and/or managing stormwater which is discharged from the Site to adjacent waters via RLI's stormwater system. The study will either be conducted by RLI or a consultant mutually agreeable to the Parties. The scope of work will be approved by the Parties. The cost of the study and the cost to implement the recommendations of the study will not exceed $50,000. The results of the study will be submitted to the Regional Water Quality Control Board and will become a public document.

E. **RELEASE OF CLAIMS**

Release. As used in this Section and throughout this Consent Decree, RLI and WMI shall mean RLI and WMI and their respective past, present and future directors, managers, officers, shareholders, partners, employees, predecessors, successors, assigns, affiliates, agents, representatives, subsidiary, parent, affiliated corporations, Site operators and Site owners.

NCRW does hereby release and forever discharge RLI and WMI, and each of them from any and all claims, liens, demands, causes of action, obligations, damages and liabilities of any nature (in law, equity or otherwise) whether or not now known, suspected or claimed, which are based upon the facts and allegations asserted in the Claims, that could have been asserted in the Claims, or that otherwise relate to the Site. NCRW hereby agrees this Consent Decree shall operate as a general release. NCRW hereby acknowledges it has been advised by counsel of the provisions of California Civil Code §1542 and expressly waives all rights under California Civil Code §1542 with respect to the general release. California Civil Code §1542 provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,

– 7 –
Consent Decree

WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

F. **ATTORNEYS' FEES AND COSTS**

Within twenty (20) days of the Effective Date of this Consent Decree, RLI shall reimburse NCRW for its fees and costs in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) ("Settlement Amount"). The Settlement Amount is to be made payable to 'Northern California River Watch' and mailed to counsel for NCRW, Jack Silver, Esquire, at the address set forth in Paragraph G.7 of this Consent Decree. The Settlement Amount shall represent the total, full and final settlement of the Claims. Except as provided herein, each Party shall bear all of its own costs and attorneys' fees incurred with respect to the Claims.

G. **NOTICE TO THE FEDERAL GOVERNMENT**

The Parties acknowledge and agree that entry of this Consent Decree is subject to the requirements of Section 505(c)(3) of the Clean Water Act, 33 U.S.C. § 1365(c)(3), which provides that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following receipt of a copy of the proposed consent judgment by the Attorney General and the [EPA] Administrator." Following the Parties' execution of this Consent Decree, the NCRW shall serve copies upon the EPA Administrator, the Attorney General, and the Regional Administrator of EPA Region IX in San Francisco, in accordance with 40 C.F.R. § 135.5.

H. **GENERAL PROVISIONS**

1. No Admission. This Consent Decree is a compromise and settlement of disputed claims and issues and neither this Consent Decree nor any action taken pursuant to this Consent Decree shall constitute any admission of fact, liability, causation, responsibility, or fault, or

proportionate share thereof by any Party herein of any liability or wrongdoing whatsoever, including without limitation, the facts and allegations asserted in the Claims, that could have been asserted in the Claims, or that otherwise relate to the Site. Neither this Consent Decree nor any negotiations or proceedings in pursuance of this Consent Decree shall be offered or received in any action or administrative, judicial or alternative dispute resolution proceeding as an admission or concession of liability or wrongdoing of any nature on the part of any Party or anyone acting on that Party's behalf, except in an action to enforce the terms of this Consent Decree.

2. Covenant Not to Sue. To the extent allowable by law and the State Bar of California, and except as allowed under this Consent Decree or as necessary to enforce this Consent Decree, for a period of five (5) years from the Effective Date of this Consent Decree, NCRW and its present or future members, officers, directors and attorneys agree they will not intentionally or actively encourage, aid, commence or prosecute any environmental lawsuits of any kind against RLI or WMI with regard to the operation or ownership of the Site. This Covenant Not to Sue shall not include or apply to non-environmental issues and non-environmental common law, tort or contractual claims related to the Site.

3. Dispute Resolution. The Parties agree that during the five (5) year non-suit period specified in Paragraph H.2. of this Consent Decree, any disputes between the Parties related to this Consent Decree shall be resolved by the following procedures:

(i) The Party claiming to be aggrieved shall furnish to the other Party a written statement of the grievance, identifying any witnesses or documents supporting the grievance, and the relief requested or proposed.

(ii) If the other Party does not agree to furnish the relief requested or proposed, or otherwise does not satisfy the demand of the Party claiming to be aggrieved within

thirty (30) days of the receipt of the written grievance, the Parties agree to Meet and Confer in person within thirty (30) days to seek a resolution.

       (iii)    If the Meet and Confer does not resolve the dispute, then any Party may request non-binding mediation (hereinafter "Mediation") of the dispute pursuant to this Paragraph H.3. Unless otherwise agreed in writing by the Parties, the Mediation will take place within thirty (30) calendar days after the request for mediation and such proceedings shall be held before a neutral mediator agreeable to the Parties. No resolution of the dispute resulting from Mediation shall be binding unless accepted in writing by the Parties. Unless otherwise agreed in writing by the Parties at the Mediation, the costs of the Mediation shall be borne equally by the Parties and each Party shall bear its own attorneys' fees and costs.

       (iv)    If the Mediation does not resolve the dispute, then the dispute shall be resolved by final and binding arbitration by an arbitrator mutually agreeable to the Parties. If the Parties cannot agree upon an arbitrator within thirty (30) days, the Parties may each designate an arbitrator. The selected arbitrators will then select a third arbitrator who will hear and rule on the dispute. The arbitrator shall have the authority to determine the rights and liabilities of the Parties with regard to the dispute. The arbitrator shall not have the authority to modify, change or refuse to enforce the lawful terms of this Consent Decree.

       (v)    The arbitration hearing shall be transcribed. The transcription fees and arbitrator fees ("Arbitration Costs") shall initially be jointly borne by the Parties. The prevailing Party shall recover its share of the Arbitration Costs as well as its attorneys' fees and costs expended in the arbitration.

       (vi)    Arbitration shall be the exclusive final remedy for any dispute between the Parties. The Parties agree that no dispute shall be submitted to arbitration unless and until the

Party claiming to be aggrieved has complied with the preliminary steps provided for in Paragraph H.3.

4. No Assignment/Liens. The Parties, and each of them, warrant that no other person or entity has claimed or now claims any interest in the subject of this Consent Decree and that the Parties have the sole right and exclusive authority to execute this Consent Decree and receive the aforementioned consideration; and, that the Parties have not sold, assigned or otherwise set over to any other person or entity, any claim, lien, demand, cause of action, obligation, damage or liability covered hereby.

5. Successors. This Consent Decree shall be binding upon and for the benefit of the Parties hereto and their respective administrators, successors, devisees and assigns.

6. Confidentiality. The Parties agree that any negotiations leading up to the settlement of the Claims constitute confidential settlement negotiations, are strictly confidential, and may not be disclosed or discussed with anyone except as may be required by law, court order, fiduciary responsibilities of the Parties, tax and accounting requirements, or to the extent necessary to enforce this Consent Decree. The Parties further agree that the provisions of California Evidence Code § 1119 shall apply to any proceeding to enforce this Consent Decree or for breach of the Consent Decree.

7. Communications and Notice. Unless otherwise provided herein or until the Parties otherwise agree in writing, all communications and notices between the Parties regarding this Consent Decree shall be provided through the following addresses:

<u>Redwood Landfill, Inc.</u>:  
District Manager  
P.O. Box 793  
Novato, CA 94948  

<u>Northern California River Watch</u>:  
Larry Hanson, Manager  
6741 Sebastopol Avenue, Suite 140  
Sebastopol, CA 95472

cc:
John Lynn Smith, Esq.
Julia C. Butler, Esq.
REED SMITH LLP
P.O. Box 2084
Oakland, CA 94604-2084
Tel. 510-763-2000
Fax. 510-273-8832

cc:
Jack Silver, Esq.
Jerry Bernhaut, Esq.
Law Offices of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax: 707-528-8675

Waste Management, Inc.:
Andrew M. Kenefick, Esq.
Sr. Legal Counsel, Western Group
Waste Management
801 Second Ave., Suite 614
Seattle, WA 98104
Tel. 206-264-8207
Fax. 206-264-8212

8. Further Cooperation. The Parties shall cooperate and promptly execute any and all documents necessary to effectuate the provisions of this Consent Decree, and agree to execute any further documentation that may be required to carry out the purpose of this Consent Decree.

9. Entire Agreement. This Consent Decree constitutes the entire agreement between the Parties. It is expressly understood and agreed that this Consent Decree may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by authorized representatives of all Parties hereto and the Court. The Parties hereby agree and acknowledge that they will make no claim at any time or place that this Consent Decree has been orally altered or modified or otherwise changed by oral communication of any kind or character. This Consent Decree shall supersede all previous agreements whether written or oral, which may have been reached between the Parties in connection with the Claims or the Site and provides the sole remedy from any Party to any other Party regarding the Claims and the Site.

10. No Factual or Legal Mistake. This Consent Decree shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating this Consent Decree are for any reason inaccurate or inappropriate. The Parties acknowledge they

have entered into this Consent Decree solely based on their own independent investigation of the facts and circumstances material to this Consent Decree, and not in any manner or to any degree based on any statement or omission by the other Parties and or their respective counsel.

11. **Voluntary.** This Consent Decree is entered into by each Party freely and voluntarily. Each Party has had the benefit of advice of counsel of choice in the negotiating, drafting and executing of this Consent Decree, and the language in all parts of this Consent Decree is the product of the efforts of all counsel. Accordingly, neither the entire Consent Decree nor any of its provisions shall be deemed to have been proposed or drafted by a Party or construed against any Party.

12. **Governing Law; Severable Enforceability.** This Consent Decree is made and entered into under the laws of the State of California and the United States and shall be governed, interpreted, construed and enforced in accordance with those laws. Should any provision of this Consent Decree be held invalid or illegal, such illegality shall not invalidate the whole of this Consent Decree, but, rather, the Consent Decree shall be construed as if it did not contain the illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

13. **Authority.** Each Party respectively represents and warrants to the other that the undersigned representative for such Party has full and complete authority to execute this Consent Decree and bind said Party to the terms hereof.

14. **Counterparts.** This Consent Decree may be executed by facsimile and in counterparts, each counterpart being considered an original, and all of which, taken together shall constitute one and the same instrument; provided, however, that original signatures will also be provided to the Parties' counsel and the Court by mail.

I.  **RETENTION OF JURISDICTION**

Subject to the provisions of this Consent Decree, this Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree. This Consent Decree shall terminate after all terms and conditions specified within this Consent Decree have been satisfied.

SO AGREED AND STIPULATED:

Dated: July 15, 2008

NORTHERN CALIFORNIA RIVER WATCH
a California non-profit corporation

By: _____ Pres.
(Title)

Dated: _____

REDWOOD LANDFILL, INC.

By: _____
(Title)

Dated: _____

WASTE MANAGEMENT, INC.

By: _____
(Title)

APPROVED AS TO FORM:

_____ 7·15·08
JACK SILVER
Attorney for Northern California River Watch

_____
ANDREW M. KENEFICK,
Attorney for Waste Management, Inc.

REED SMITH LLP

_____
John Lynn Smith
Attorneys for Redwood Landfill, Inc.

IT IS SO ORDERED.

Dated and entered into on  October 20 , 2008.

_____
UNITED STATES DISTRICT JUDGE

*IT IS SO ORDERED*
*Judge William Alsup*
*UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA*

— 14 —
Consent Decree

## I. RETENTION OF JURISDICTION

Subject to the provisions of this Consent Decree, this Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree. This Consent Decree shall terminate after all terms and conditions specified within this Consent Decree have been satisfied.

SO AGREED AND STIPULATED:

Dated: _____

NORTHERN CALIFORNIA RIVER WATCH
a California non-profit corporation

By: _____ (Title)

Dated: 7/16/08

REDWOOD LANDFILL, INC.

By: _____
VP/Assistant Secretary (Title)

Dated: 7/16/08

WASTE MANAGEMENT, INC.

By: _____
Western Group General (Title)
Counsel and VP

APPROVED AS TO FORM:

JACK SILVER
Attorney for Northern California River Watch

ANDREW M. KENEFICK,
Attorney for Waste Management, Inc.

REED SMITH LLP

John Lynn Smith
Attorneys for Redwood Landfill, Inc.

IT IS SO ORDERED.

Dated and entered into on _____, 2008.

_____
UNITED STATES DISTRICT JUDGE

-14-

## I. RETENTION OF JURISDICTION

Subject to the provisions of this Consent Decree, this Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree. This Consent Decree shall terminate after all terms and conditions specified within this Consent Decree have been satisfied.

SO AGREED AND STIPULATED:

Dated: _____   NORTHERN CALIFORNIA RIVER WATCH
                         a California non-profit corporation

                         By_____
                                                    (Title)

Dated: _____   REDWOOD LANDFILL, INC.

                         By: _____
                                                    (Title)

Dated: _____   WASTE MANAGEMENT, INC.

                         By: _____
                                                    (Title)

**APPROVED AS TO FORM:**

_____
JACK SILVER
Attorney for Northern California River Watch

_____
ANDREW M. KENEFICK,
Attorney for Waste Management, Inc.

REED SMITH LLP

_____
John Lynn Smith
Attorneys for Redwood Landfill, Inc.

**IT IS SO ORDERED.**

Dated and entered into on _____, 2008.

_____
UNITED STATES DISTRICT JUDGE

– 14 –
Consent Decree